IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY HAMMOND MURPHY<br><br>Plaintiff,<br><br>v.<br><br>New Motors, Inc.,<br><br>Defendant. | Civil Action No.<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Anthony Hammond Murphy, by and through undersigned counsel, seeks a permanent injunction requiring a change in the corporate policies of New Motors, Inc., ("Defendant or New Motors"), particularly to cause its online store to become and remain accessible to individuals who are partially sighted, visually impaired, or totally blind. In support thereof, Plaintiff respectfully asserts as follows:

**INTRODUCTION**

1. The Department of Justice first articulated its interpretation that the ADA applies to public accommodations' websites over 20 years ago. This interpretation is consistent with the ADA's title III requirement that the goods, services/products, privileges, or activities provided by places of public accommodation be equally accessible to people with disabilities.

2. Surely the ADA applies to websites and mobile applications, equally.

3. Anthony Hammond Murphy is legally blind. Accordingly, he uses screen reader technology, including VoiceOver and JAWS, to navigate the Internet.

4.      Screen reader "software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user." *Andrews v. Blick Art Materials, LLC*, 17-CV-767, 2017 WL 6542466, at *6 (E.D.N.Y. Dec. 21, 2017) (J. Weinstein).

5.      Defendant provides a wide range of automotive products to individual and commercial clients for sale on its website and elsewhere. *See,* www.newmotorsbmw.com (last accessed November 18, 2019).

6.      Defendant offers these services/products via website, as well as brick and mortar stores, however, only its website is at issue in this lawsuit.

7.      Consumers may research and access brand-related content and services/products at www.newmotorsbmw.com, ("Website"), Website Defendant owns, operates, and controls.

8.      Defendant is responsible for the policies, practices, and procedures concerning the Website's development and maintenance.

9.      Unfortunately, Defendant denies all Americans who have difficulty seeing access to its Website's goods, content, and services/products because the Website is largely incompatible with the screen reader programs these Americans use to navigate an increasingly ecommerce world.

10.     Plaintiff brings this civil rights action against Defendant to enforce Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("Title III"), which requires, among other things, that a public accommodation (1) not deny persons with disabilities the benefits of its services/products, facilities, privileges and advantages; (2) provide such persons with benefits that are equal to those provided to nondisabled persons; (3) provide auxiliary aids and services—including electronic services for use with a computer screen reading program—where necessary to ensure effective communication with individuals with a visual disability, and to ensure that such

persons are not excluded, denied services/products, segregated or otherwise treated differently than sighted individuals; and (4) utilize administrative methods, practices, and policies that provide persons with disabilities equal access to online content.

11. By failing to make its Website available in a manner compatible with screen reader programs, Defendant, a public accommodation subject to Title III, deprives individuals who are partially sighted, visually impaired or totally blind the benefits of the goods, content, and services/products of its online store—all benefits it affords nondisabled individuals—thereby increasing the sense of isolation and stigma among these Americans that Title III was meant to redress.

12. Because Defendant's Website is not and has never been accessible, and because upon information and belief Defendant does not have, and has never had, an adequate corporate policy that is reasonably calculated to cause its Website to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction as more fully stated hereinafter.

13. Defendant, therefore, must retain a qualified consultant acceptable to Plaintiff ("Approved Accessibility Consultant") who shall assist it in improving the accessibility of its Website, including all third-party content and plug-ins, so the goods and services/products on the Website may be equally accessed and enjoyed by individuals with vision related disabilities.

14. Defendant, therefore, must work with the Approved Accessibility Consultant to ensure that all employees involved in website development be given accessibility training, including onsite training to create accessible content at the design and development stages.

15. Defendant, therefore, must work with the Approved Accessibility Consultant to perform an automated accessibility audit to evaluate whether Defendant's Website may be equally accessed and enjoyed by individuals with vision related disabilities on an ongoing basis.

16. Defendant, therefore, must work with the Approved Accessibility Consultant to perform end-user accessibility/usability testing performed by humans who are blind or have low vision, or who have training and experience in the manner in which persons who are blind use a screen reader to navigate, browse, and conduct business on websites.

17. Defendant, therefore, must incorporate all of the Approved Accessibility Consultant's recommendations.

18. Defendant, therefore, must work with the Approved Accessibility Consultant to create an Accessibility Policy that will be posted on its Website, along with an e-mail address, instant messenger, and toll-free phone number to report accessibility-related problems.

19. Defendant, therefore, must provide a copy of the Accessibility Policy to all web content personnel, contractors responsible for web content, and "Client Service Operations" call center agents ("CSO Personnel") for the Website.

20. Defendant, therefore, must train CSO Personnel to automatically escalate calls from users with disabilities who encounter difficulties using the Website. Defendant shall have trained CSO personnel to timely assist such users with disabilities within CSO published hours of operation. Defendant shall establish procedures for promptly directing requests for assistance to such personnel including notifying the public that customer assistance is available to users with disabilities and describing the process to obtain that assistance.

21. Defendant, therefore, modify existing bug fix policies, practices, and procedures to include the elimination of bugs that cause the Website to be inaccessible to users of screen reader technology.

22. In sum, electronic information technology features and content are modified on a daily, and in some instances an hourly, basis, and a one time "fix" to an inaccessible website will

not cause the website to remain accessible without a corresponding change in corporate policies related to those electronic information technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to electronic information technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing.

## JURISDICTION AND VENUE

23. The claims alleged arise under Title III such that this Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

24. Defendant attempts to, and indeed does so, participate in the Commonwealth's economic life by clearly performing business over the Internet. Through its Website, Defendant enters into contracts for the sale of its services/products with residents of Pennsylvania. These electronic sales involve, and indeed require, Defendant's knowing and repeated transmission of computer files over the Internet. *See Gniewkowski v. Lettuce Entertain You*, Order, ECF No. 123 (W.D. Pa Apr. 25, 2017) *clarified by* Order of Court, ECF No. 169 (W.D. Pa. June 22, 2017) (Judge Schwab) (exercising personal jurisdiction over forum plaintiff's website accessibility claims against out-of-forum website operator); *see also Access Now Inc. v. Otter Products, LLC*, 280 F.Supp.3d 287 (D. Mass. Dec. 4, 2017) (same); *Access Now, Inc. v. Sportswear, Inc.*, 298 F.Supp.3d 296 (D. Mass. 2018) (same).

25. As described in additional detail below, Plaintiff was injured when he attempted to access Defendant's Website from his home in this District but encountered barriers that denied his full and equal access to Defendant's online goods, content, and services/products.

26. Venue in this District is proper under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred.

## PARTIES

27. Plaintiff is and, at all times relevant hereto, has been a resident of Erie County, Pennsylvania. Plaintiff is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

28. Defendant is a Pennsylvania automotive corporation, with a registered address of 8670 PEACH ST ERIE PA 16509-4721, Erie County, and directs sales and operates the business throughout Western Pennsylvania.

## FACT

### DEFENDANT'S ONLINE CONTENT

29. Defendant's Website allows consumers to research and purchase Defendant's services/products from the comfort and convenience of their own homes. The Website also enables consumers to find nearby locations that offer Defendant's services/products, contact customer service, and more.

30. Defendant is responsible for the policies, practices, and procedures concerning the Website's development and maintenance.

### HARM TO PLAINTIFF

31. Plaintiff attempted to access the Website from Erie, Pennsylvania. Unfortunately, because of Defendant's failure to build its Website in a manner that is compatible with screen reader programs, Plaintiff is unable to understand, and thus is denied the benefit of, much of the content and services/products he wishes to access on the Website.

32. Plaintiff attempted to access the Website using VoiceOver with iOS.

33. VoiceOver is "a full-featured screen reader built into macOS that speaks the text in documents and windows, and describes aloud what appears on your screen…With VoiceOver, you control your Mac primarily with a keyboard, refreshable braille display, or trackpad. You use the VoiceOver cursor—which appears as a dark rectangular outline—to move around the screen, select buttons and other controls, and to read and edit text." *See* Apple, VoiceOver Getting Started Guide, *available at* https://help.apple.com/voiceover/info/guide/10.12/#/vo2681 (last accessed Mar. 13, 2018).

34. Unfortunately, as a result of visiting Defendant's Website from Erie, Pennsylvania, and from investigations performed on his behalf, Plaintiff found Defendant's Website to be largely unusable due to various barriers that deny him full and equal access to the content and services/products available in Defendant's online store. For example:

   a. Links and buttons on the website do not describe their purpose. As a result, blind users cannot determine whether they want to follow a particular link, making navigation an exercise of trial and error. For example, shoppers who perceive content visually will likely recognize the Menu, Pin, and Telephone icons displayed throughout the website and understand that by clicking them, Defendant will redirect shoppers to a list of its website services, location, and contact information, respectively. Unfortunately, these icons are not labeled. As a result, when Plaintiff hovers over them, his screen reader reads "button" only, making it impossible for him to utilize these important features independently.

   b. The website prevents screen reader users who navigate sequentially through content from accessing primary content directly. For example, after users activate or click the menu button, Defendant's website displays a pop-up menu on the left side of the screen. Shoppers who perceive content visually can click various buttons in this pop-up to access additional content related to, for example, Home, New Inventory, and Pre-Owned Vehicles. Unfortunately, Defendant's website requires that Plainitff tab through the unrelated elements in the website's underlying page before his screen reader scrolls to the primary content of this pop-up window. This burdensome and unnecessary interaction makes it likely that Plaintiff will leave the website before accessing this menu and deters him from making a purchase.

   c. The website does not provide a sufficient text equivalent for many important non-

    text elements. Providing text alternatives allows the information to be rendered in a variety of ways by a variety of users. A person who cannot see a picture, logo, or icon can have a text alternative read aloud using synthesized speech. For example, the website uses image files to convey visually available promotions. Unfortunately, Defendant's corporate accessibility policies fail to ensure these images include alternative text to describe available promotions in sufficient detail so that a screen reader user, like our clients, can determine what these images represent. To this end, Defendant's website includes an image with text provides: "2019 Volkswagon Atlas $6,000 off MSRP." Unfortunately, the alternative text associated with this image provides: "seven underscore nineteen underscore new underscore motors underscore vw underscore web underscore banners two thousand nineteen atlas sel jpg link image." This alternative text is meaningless and fails to describe the important promotional information that other shoppers perceive visually, making it more likely that Plainitff will miss out on the promotion.

    d. The Website fails to sufficiently describe the purpose of all headings. As a result, blind users will have significant difficulty understanding what information is contained on pages and how that information is organized. When headings are clear and descriptive, users can find information they seek more easily, and they can understand the relationships between different pieces of content.

    e. The Website does not include sufficiently descriptive labels or instructions when content requires a user to submit information or activate particular features. Without these instructions, screen reader users cannot fully navigate the webpages.

    f. Elements on the Website do not have complete start and end tags, are not nested according to their specifications, and may contain duplicate attributes. As a result, screen readers cannot parse the webpages' content accurately.

    g. The Website includes user interface components, such as form elements and links, for which the name and role cannot be determined programmatically.

35. These barriers, and others, deny Plaintiff full and equal access to all of the services/products the Website offers, and now deter him from attempting to use the Website. Still, Plaintiff would like to, and intends to, attempt to access the Website in the future to research the services the Website offers, or to test the Website for compliance with the ADA. Thus, Plaintiff has standing as an intended purchaser of Defendant's products and/or as a tester. In the Western District of Pennsylvania, it has been recognized, "the weight of authority is to permit standing to a plaintiff who acts as a tester." *Heinzl v. Cracker Barrel Old Country Stores, Inc.*, 2:14-cv-1455,

2016 WL 2347367, at *21 (W.D. Pa. Jan. 27, 2016), *report and recommendation adopted as modified sub nom. Heinzl v. Cracker Barrel Old Country Store, Inc.*, 2:14-CV-1455, 2016 WL 1761963 (W.D. Pa. Apr. 29, 2016).

36. If the Website was accessible, *i.e.* if Defendant removed the access barriers described above, Plaintiff could independently research and access its online content and services.

37. Though Defendant may have centralized policies regarding the maintenance and operation of its Website, Defendant has never had a plan or policy that is reasonably calculated to make its Website fully accessible to, and independently usable by, individuals with vision related disabilities. As a result, the complained of access barriers are permanent in nature and likely to persist.

38. The law requires that Defendant reasonably accommodate Plaintiff's disabilities by removing these existing access barriers. Removal of the barriers identified above is readily achievable and may be carried out without much difficulty or expense.

39. Plaintiff has been, and in the absence of an injunction will continue to be, injured by Defendant's failure to provide its online content and services/products in a manner that is compatible with screen reader technology.

### KNOWLEDGE OF ONLINE ACCESSIBILITY REQUIREMENTS

40. Defendant has long known that screen reader technology is necessary for individuals with visual disabilities to access its online content and services/products, and that it is legally responsible for providing the same in a manner that is compatible with these auxiliary aids. In fact, Plaintiff notified Defendant of its responsibilities in this regard, by letter dated August 19, 2019, prior to initiating this action, to no avail.

### NO AVAILABLE ADMINISTRATIVE REMEDIES

41. There is no DOJ administrative proceeding that could provide Plaintiff with Title III injunctive relief.

42. While DOJ has rulemaking authority and can bring enforcement actions in court, Congress has not authorized it to provide an adjudicative administrative process to provide Plaintiff with relief.

43. Plaintiff alleges violations of existing and longstanding statutory and regulatory requirements to provide auxiliary aids or services necessary to ensure effective communication, and courts routinely decide these types of effective communication matters.

44. Resolution of Plaintiff's claims does not require the Court to unravel intricate, technical facts, but rather involves consideration of facts within the conventional competence of the courts, *e.g.* (a) whether Defendant offers content and services/products on its Website, and (b) whether Plaintiff can access the content and services/products.

## Title III of the ADA, 42 U.S.C. § 12181 *et seq*.

45. The assertions contained in the previous paragraphs are incorporated by reference.

46. Defendant's Website is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). *See Suchenko v. ECCO USA, Inc.*, 2018 WL 3933514, *3 (W.D. Pa. Aug. 16, 2018) ("Simply put, Defendant in the instant case, like other corporate defendants in *Gniewkowski* and *Suchenko*, purportedly owns, operates, and/or controls the property upon which the alleged discrimination has taken place—i.e., its websites. Therefore, Plaintiff in this case has a nexus to the place of public accommodation and thus may claim the protections of Title III").

47. The ADA prohibits discrimination on the basis of a disability in the full and equal enjoyment of goods and services/products of any place of public accommodation. 42 U.S.C. §

12182(a). Thus, to the extent Defendant does not provide Plaintiff with full and equal access to its Website, it has violated the ADA.

48. In more specific terms, Title III of the ADA imposes statutory and regulatory requirements to ensure persons with disabilities are not excluded, denied services/products, segregated or otherwise treated differently than other individuals as a result of the absence of auxiliary aids and services/products. 42 U.S.C. § 12182(b)(2)(A); 28 C.F.R. §§ 36.303(a), (c). Under these provisions, public accommodations must furnish appropriate auxiliary aids and services/products that comply with their effective communication obligations. *Id.*

49. Auxiliary aids and services/products are necessary when their absence effectively excludes an individual from participating in or benefiting from a service/products, or fails to provide a like experience to the disabled person.

50. Auxiliary aids and services/products include, but are not limited to, audio recordings, screen reader software, magnification software, optical readers, secondary auditory programs, large print materials, accessible electronic and information technology, other effective methods of making visually delivered materials available to individuals who are blind or have low vision, and other similar services and actions. 28 C.F.R. §§ 36.303(b)(2), (4).

51. In order to be effective, auxiliary aids and services/products must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability. 28 C.F.R. §§ 36.303(c)(1)(ii).

52. By failing to provide its Website's content and services/products in a manner that is compatible with auxiliary aids, Defendant has engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination, as defined by Title III by

denying individuals with visual disabilities opportunities to participate in and benefit from the goods, content, and services/products available on its Website.

53. By failing to provide its Website's content and services/products in a manner that is compatible with auxiliary aids, Defendant has engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination, as defined by Title III by denying individuals with visual disabilities access to its Website that is not equal to, or effective as, that afforded others.

54. By failing to provide its Website's content and services/products in a manner that is compatible with auxiliary aids, Defendant has engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination, as defined by Title III by utilizing methods of administration that (i) have the effect of discriminating on the basis of disability; or (ii) perpetuate the discrimination of others who are subject to common administrative control.

55. By failing to provide its Website's content and services/products in a manner that is compatible with auxiliary aids, Defendant has engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination, as defined by Title III by denying individuals with visual disabilities effective communication, thereby excluding or otherwise treating them differently than others.

56. By failing to provide its Website's content and services/products in a manner that is compatible with auxiliary aids, Defendant has engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination, as defined by Title III by failing to make reasonable modifications in policies, practices, or procedures where necessary to

afford its services, privileges, advantages, or accommodations to individuals with visual disabilities.

57. Defendant has violated Title III by, without limitation, failing to make its Website's services accessible by screen reader programs, thereby denying individuals who are partially sighted, visually impaired, or totally blind the benefits of the Website, providing them with benefits that are not equal to those it provides others, and denying them effective communication.

58. Defendant has further violated Title III by, without limitation, utilizing administrative methods, practices, and policies that allow its Website to be made available without consideration of consumers who can only access the company's online goods, content, and services/products with screen reader programs.

59. Making its online goods, content, and services/products compatible with screen readers does not change the content of Defendant's Website nor result in making the Website different, but enables individuals with visual disabilities to access the Website Defendant already provides.

60. Defendant's ongoing violations of Title III have caused, and in the absence of an injunction will continue to cause, harm to Plaintiff and other individuals with visual disabilities.

61. Plaintiff's claims are warranted by existing law or by non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law.

62. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for:

(A) A judgment declaring from the commencement of this action Defendant was in violation of Title III of the ADA, and the relevant implementing regulations of the ADA, in that Defendant took no action reasonably calculated to ensure that its Website is fully accessible to, and independently usable by, individuals with visual disabilities;

(B) A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) directing Defendant to take all steps necessary to bring its Website into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its Website is fully accessible to, and independently usable by, individuals with visual disabilities, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following institutional policies that cause it to remain fully in compliance with the law—the specific injunctive relief requested by Plaintiff is described more fully described in paragraphs 12 through 22 above;

(C) Payment of costs of suit;

(D) Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, including costs of monitoring Defendant's compliance with the judgment (*see Gniewkowski v. Lettuce Entertain You Enterprises, Inc.*, Case No. 2:16-cv-01898-AJS (W.D. Pa. Jan. 11, 2018) (ECF 191);

(E) Whatever other relief the Court deems just, equitable and appropriate; and

(F) An Order retaining jurisdiction over this case until Defendant has complied with the Court's Orders.

Dated: November 19, 2019       Respectfully Submitted,
                               */s/ Lawrence H. Fisher*
                               Lawrence H. Fisher
                               One Oxford Centre

301 Grant Street, Suite 4300
Pittsburgh, PA 15219
Phone: (412) 577 4040
*Counsel for Plaintiff*

15